IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

JEFF FUHRMAN,

         Plaintiff,

vs.                                **Case No. 09-4014-RDR**

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,
         Defendant.

**MEMORANDUM AND ORDER**

Plaintiff has filed applications for social security disability income benefits and supplemental security income benefits. Plaintiff's applications allege a disability onset date of April 27, 2005. On July 17, 2008, a hearing was conducted upon these applications. The administrative law judge (ALJ) considered the evidence and decided that plaintiff was not qualified to receive benefits on either application. That decision was adopted by defendant. This case is now before the court upon plaintiff's motion to review the decision to deny plaintiff's applications for benefits.

I.   STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he is "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E). This means proving that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . .

has lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A). But, disability benefits can only be awarded to claimants who can show that they were disabled prior to the last insured date. §§ 423(a)(1)(A) & 423(c).

For supplemental security income claims, a claimant becomes eligible in the first month where he is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971).

II. THE ALJ'S DECISION (Tr. 16-25).

The ALJ made the following findings in her decision. First, plaintiff meets the insured status requirements for Social Security benefits through December 31, 2008. Second, plaintiff has not engaged in substantial gainful activity since April 27, 2005. Third, plaintiff has the following severe impairments: partial left foot amputation in 1995; degenerative disc disease of the cervical spine with evidence of stenosis and foraminal encroachment; moderate to severe left carpal tunnel syndrome;

degenerative disc disease of the lumbar spine without stenosis; a history of headaches; and depressive disorder. Fourth, plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity (RFC) to perform a range of sedentary work. Sixth, plaintiff is unable to perform any past relevant work. Seventh, considering plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Examples of such jobs include circuit board assembler positions, administrative support worker positions, and semi-conductor bonder jobs.

III. PLAINTIFF'S ARGUMENTS

Plaintiff's arguments in this matter concern the ALJ's consideration of a medical source statement from Dr. Allen Greiner, who was a treating physician for plaintiff. Dr. Greiner saw plaintiff mostly in 2002 and 2003. Dr. Greiner examined plaintiff in December 2007 and, on March 5, 2008, he filled out a medical source statement (Tr. 330-33) which states that plaintiff is limited to lifting less than 10 pounds on an occasional basis; can stand or walk less than 2 hours in an 8-hour workday; and can sit less than 6 hours in an 8-hour workday. In addition, Dr. Greiner indicated on the form that plaintiff can never climb, crouch or crawl and only occasionally balance, kneel and stoop. Dr. Greiner

further noted limitations in manipulative functions such as reaching, handling, fingering and feeling. He explained that plaintiff has severe osteoarthritis in the neck, back and extremities; neuropathy in his arms and legs; balance and mobility problems secondary to his foot amputation; and nerve impingement.

The ALJ made the following remarks regarding Dr. Greiner's conclusions:

> On March 8, 2008, Dr. Allen Greiner, J.D., completed a Medical Source Statement, which may be viewed as disabling the claimant with an assessment at less than sedentary with standing less than 6 hours and sitting less than 2 hours. (Ex. 14F) If the claimant cannot stand and sit a total of 8 hours, he is disabled. Dr. Greiner cited severe osteoarthritis, neuropathy of the arms and legs, and impairment of balance and mobility secondary to forefoot amputation years ago. While there is evidence of osteoarthritis, there is no objective evidence of neuropathy. As for the claimant's foot amputation, he has had that condition for years and yet has been able to work. It is also noteworthy that on December 28, 2007, in his most recent examination of the claimant, Dr. Greiner found that the claimant's gait and station were normal and that he could undergo exercise testing and/or participate in an exercise program. No neuropathy was noted. Before that examination, Dr. Greiner had not seen the claimant since 2004. (Ex. 4F) In those records is a letter from Dr. George Varghese, M.D., Department of Rehabilitation Medicine, dated January 16, 2003, who states: "in summary, patient has diffuse musculoskeletal complaints and also history of numerous trauma in the past. Major trauma appears to be the distal extremity amputation, as well as carpal tunnel release and ulnar transposition. In spite of all of these complaints, I am unable to find any definite objective findings. He has diffuse tenderness, but no clinical evidence of radiculopathy in the upper or lower extremities. I could not detect any inflammatory changes or any deformities in any of the joints. He has symptoms suggestive of carpal tunnel syndrome, but no other findings. I had some discussion with the patient regarding employability. Because of musculoskeletal complaints, I feel that he

should restrict lifting, bending, squatting and also
frequent bending. Other than placing restrictions, I
cannot say that, at leased(sic) based on the physical
examination, that he is totally disabled for any gainful
employment. Patient was not very happy with this
statement. I told him that if Dr. Greiner wants I can do
a work capacity assessment to make a statement as regards
to exact amount of bending and lifting, but again I
reiterated my view that I cannot declare him totally
disabled."

(Tr. 20-21).[1]

Plaintiff contends that the decision to deny his applications for benefits must be reversed and remanded because the ALJ: 1) failed to state whether he gave controlling weight to the opinion of Dr. Greiner or indicate why he declined to grant controlling weight to Dr. Greiner's opinion; and 2) the ALJ never specified the weight he granted to Dr. Greiner's opinion.

A. <u>Controlling Weight</u>

Plaintiff's first argument pertains to the Social Security regulations at 20 C.F.R. § 404.1527(d) which concern the weighing of medical opinions:

> Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) *Examining relationship*. . . .
> (2) *Treatment relationship*. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique

---

[1] The court believes the ALJ meant to say that Dr. Greiner indicated plaintiff could stand less than 2 hours and sit less than 6 hours, instead of the other way around.

> perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. <u>If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.</u>
>   (i) *Length of the treatment relationship and the frequency of examination.* . . .
>   (ii) *Nature and extent of the treatment relationship.* . . .
>  (3) *Supportability.* . . .
>  (4) *Consistency.* . . .
>  (5) *Specialization.* . . .
>  (6) *Other factors.*

(Underscoring added).

The Tenth Circuit has addressed this issue in many opinions including the following opinions which are mentioned in the briefs filed in this case. In <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003), the Tenth Circuit reversed a decision to deny benefits when the ALJ "offered no explanation for the weight, if any, he gave to the opinion of . . . the treating physician." The court remarked that a finding as to whether the opinion was unsupported or inconsistent with other substantial evidence was necessary for proper review. <u>Id</u>. The court emphasized that under the regulations, "an ALJ must 'give good reasons in [the] notice of

6

determination or decision' for the weight assigned to a treating physician's opinion." Id., quoting 20 C.F.R. 404.1527(d)(2). These reasons "'must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Id., quoting SSR 96-2p, 1996 WL 374188, at *5.

In Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2003), the Tenth Circuit reversed a decision to deny benefits when the ALJ characterized a treating physician's opinion as "vague and conclusive" but did not explain why he reached that opinion or describe what lesser weight he gave the physician's opinion.

In Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007), the Tenth Circuit held that an ALJ did not violate the regulations cited above when he said that he gave "very little weight" to the opinions of various treating physicians, because he explained that the physicians "did not have the opportunity to see or did not give weight to contrary evidence" of the claimant's functional capacity and he cited to contrary, well-supported medical evidence which backed up his decision. The Tenth Circuit commented that the ALJ gave good reasons for the weight he gave to the treating sources' opinions and nothing more was required. Id. Specifically, the court held that there was no requirement that the ALJ explicitly discuss all of the factors in § 404.1527(d).

In the case at bar, the ALJ obviously did not give controlling

7

weight to the opinions expressed by Dr. Greiner on the medical source statement in March 2008. She indicated that there was no objective evidence of neuropathy; that plaintiff's gait and station were normal in his most recent examination in December 2007; that he had been able to work for a number of years in spite of the partial amputation of his left foot; and that Dr. Greiner's statement was not consistent with the January 2003 opinion of Dr. Varghese, to whom plaintiff had been referred by Dr. Greiner. These points relate to such factors in § 404.1527(d) as support and consistency with other substantial medical evidence. Also, in relation to the frequency of examination, the ALJ noted that Dr. Greiner had examined plaintiff only once (in December 2007) since 2004.[2]

Thus, assuming these are "good reasons" for the weight given to Dr. Greiner's statement, the ALJ complied with § 404.1527(d). Plaintiff argues briefly that these are not "good reasons." Plaintiff asserts that, contrary to the ALJ's statement, there is objective evidence of neuropathy, such as the electrodiagnostic testing performed by Dr. Lisa Hermes which showed "left moderate to severe median entrapment neuropathy" (Tr. 322), and positive Tinel's and Phalen's tests on the right side by Dr. Fortune (Tr. 245). This does not persuade the court that the ALJ failed to give

---

[2] As defendant notes in his response brief, it appears that prior to December 2007, Dr. Greiner last saw plaintiff in 2003, not 2004.

good reasons for rejecting Dr. Greiner's conclusions regarding plaintiff's capacity to sit and stand and otherwise perform sedentary employment. Dr. Hermes' findings related to carpel tunnel syndrome. The ALJ acknowledged that plaintiff had carpel tunnel syndrome. (Tr. 18). Dr. Fortune's report was considered favorably by the ALJ who noted that Dr. Fortune concluded that plaintiff could handle coins and buttons with no problems and frequently, but not constantly reach, handle, finger and feel. (Tr. 21). The record contains a mixture of neurologic results, including the records of plaintiff's December 2007 examination by Dr. Greiner which do not note any major neurologic deficit. (Tr. 280). Nothing in these records regarding neuropathy indicates that it would prevent plaintiff from the examples sedentary employment listed in the ALJ's decision.

Plaintiff also notes that the record makes several references to plaintiff having a limping gait and, therefore, Dr. Greiner's reference to a normal gait in December 2007 should not be given much significance by the ALJ, particularly when Dr. Greiner commented that there was deterioration in plaintiff's arthritis. While this may be a fair point, once again, it does not detract significantly from the ALJ's conclusion that plaintiff is capable of doing sedentary employment. Nor does it prove that the ALJ incorrectly weighed Dr. Greiner's statement. As the ALJ noted, plaintiff was able to work for several years with an amputated

9

foot.

In sum, the court finds that the ALJ gave good reasons for not giving controlling weight to Dr. Greiner's medical source statement and that she properly explained how she considered the statement in relation to other parts of the record.

B. <u>Weight specification</u>

Plaintiff contends that this matter should be reversed and remanded because the ALJ did not specify how much weight he gave to Dr. Greiner's statement. It is clear that the ALJ did not give controlling weight to the statement. We have already held that, in accordance with 404.1527(d)(2), the ALJ gave good reasons for her decision not to do so. It is also clear that the ALJ gave no weight to Dr. Greiner's conclusion that plaintiff could not sit for six hours out of an 8-hour workday or stand/walk for two hours out of an 8-hour workday because the ALJ reached different conclusions regarding plaintiff's RFC. See <u>Avery v. Astrue</u>, 313 Fed.Appx. 114, 121 (10th Cir. 2009) (finding it clear that an ALJ rejected a doctor's opinion that a claimant met the medical listings for impairment when the ALJ found that the listings were <u>not</u> met or equaled).

As stated previously, the ALJ indicated that she gave "weight" to a consultative physical evaluation dated July 16, 2005 by Dr. Fortune. Dr. Fortune diagnosed plaintiff with: left foot amputation; right foot pain; right wrist and hand pain; left

forearm pain; migraine headaches; low back pain; and generalized stiffness in all joints including neck and shoulders.[3]  Dr. Fortune's diagnoses and evaluation of plaintiff's abilities are similar in most respects to the statement made by Dr. Greiner.

The strongest difference between Dr. Fortune's 2005 opinion and Dr. Greiner's 2008 statement is that Dr. Fortune concluded plaintiff can sit for an extended period with little or no problem whereas Dr. Greiner indicated that plaintiff could sit for less than six hours in an 8-hour workday.  Dr. Greiner also concluded that plaintiff could stand or walk for less than 2 hours in an 8-hour workday.  Dr. Fortune stated that plaintiff would suffer some pain from prolonged standing and walking, but the ALJ concluded from the rest of the record that plaintiff could perform sedentary employment, which would require the ability to stand or walk for at least 2 hours in an 8-hour day.  The ALJ clearly credited the reports of Dr. Fortune and Dr. Varghese (who found that plaintiff was not totally disabled from employment - Tr. 367) over Dr. Greiner's statement in these regards.  The ALJ's conclusions were probably bolstered by his evaluation of plaintiff's daily activities.  The ALJ noted:

> The evidence also shows that the [plaintiff's] daily activities demonstrate successful independent living which is inconsistent with the claims of disabling impairments.  The [plaintiff] testified he lives by

---

[3]Dr. Fortune also examined plaintiff in March 2006 and reached similar conclusions.  (Tr. 251-54).

11

>himself in his mother's home where he takes care of a
>garden, does the yard work, and uses a lawn tractor to
>mow about an acre. The [plaintiff] is able to drive
>himself to go shopping.

(Tr. 22). It is also noteworthy that plaintiff testified that his "biggest problem" preventing him from working was his headaches. (Tr. 442). This suggests that any deterioration in his arthritis, as noted by Dr. Greiner, is not so severe that it keeps him from sitting or standing as needed to perform sedentary work.

In sum, the court believes that the ALJ adequately explained how she weighed and evaluated evidence in the record. It does not require guesswork or speculation to interpret the ALJ's decision. We do not believe her decision would have been improved significantly had she said that she gave "little" or "very little" or "moderate" weight to the statement of Dr. Greiner.

IV. CONCLUSION

The court is convinced that the decision to deny benefits in this case followed the proper legal standards and is supported by substantial evidence. Therefore, the court affirms defendant's decision to deny plaintiff's applications for disability income benefits and supplemental security income benefits.

**IT IS SO ORDERED.**

Dated this 11th day of January, 2010 at Topeka, Kansas.

> s/Richard D. Rogers
> United States District Judge